IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LONNIE R. CUMMINS                                                        PLAINTIFF

VS.                              NO.  4:04CV00871 JWC

JO ANNE B. BARNHART,                                                     DEFENDANT
Commissioner, Social
Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff, Lonnie R. Cummins, appeals from the denial of his claim for disability

insurance benefits and supplemental security income payments.  The decision of the

Administrative Law Judge (ALJ) on February 7, 2002, has become the final decision of the

Commissioner.  The only issue in this case is whether Plaintiff's impairment and inability

to work lasted or could have been expected to last for a continuous period of at least

twelve months, as required by the Social Security statutes and regulations.  For the

reasons that follow, the Court affirms the Commissioner's decision that Plaintiff was not

disabled during the applicable time period.

Judicial review of the Commissioner's denial of benefits examines whether the

decision is based on legal error, and whether the findings of fact are supported by

substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Brown v. Barnhart, 390

F.3d 535, 538 (8th Cir. 2004).  Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  Richardson v.

Perales, 402 U.S. 389, 401 (1971).  If it is possible to draw two inconsistent conclusions

from the evidence and one of these conclusions represents the Commissioner's findings,

the Commissioner's decision must be affirmed.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1]  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Both the inability to work and the impairment must last, or be expected to last, for a continuous twelve-month period. Soc. Sec. Rul. 82-52, 1975-1982 Soc. Sec. Rep. Serv. 757, 1982 WL 31376; Titus v. Sullivan, 4 F.3d 590, 594-95 (8th Cir. 1993); see Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (finding this interpretation of the statutory language to be lawful).

Plaintiff was born on September 23, 1957, has a high school equivalent education, and has worked as a millwright and millwright foreman since 1975.  (Tr. 56-59, 155, 161, 166, 190, 192-93.)  See DICOT 638.281-018 (4th ed. 1991) (a millwright assembles, installs, dismantles and moves machinery and equipment).  In his applications, he alleged disability since his alleged onset date of July 2, 1999, due to Rocky Mountain spotted fever and its residual effects.  He returned to work eleven months later, on June 10, 2000.  (Tr. 58, 155, 167-68, 363.)

The medical evidence shows that, on July 7, 1999, Plaintiff was admitted to the hospital acutely ill with abdominal pain, generalized weakness, nausea and vomiting.  He

---

[1]Plaintiff's argument here is that the twelve-month durational requirement was met, not that he suffered from an impairment that was expected to result in death.  The ALJ noted that Plaintiff did not have a terminal illness which could be expected to result in death prior to twelve months. (Tr. 27.)

was soon diagnosed with Rocky Mountain spotted fever, and with secondary development of a seizure disorder, respiratory failure, renal failure and probable cholecystitis (inflammation of the gallbladder).  He remained hospitalized until July 19, 1999, and it is undisputed that he was "gravely ill" during this time.  (Tr. 231-335, 137.)  Upon discharge, he was placed on bed rest and was prescribed Dilantin, Pepcid, doxycycline, Levaquin, Xanax and Ambien.[2]  (Tr. 232-33.)  On July 23, 1999, Plaintiff's primary care physician, Dr. Jim Citty, stated that Plaintiff was temporarily totally disabled for six months, requiring "attendance at home."  (Tr. 347.)

On August 2, 1999, Plaintiff reported to Dr. Citty that he was dizzy, his ears were ringing, and he was seeing "camera flashes" and having flashbacks.  He was diagnosed with a seizure disorder and Rocky Mountain spotted fever, Dilantin was continued, and an appointment was made with a neurologist, Dr. Peggy Brown, for evaluation of his seizure disorder.  (Tr. 344.)

On August 16, 1999, Plaintiff saw Dr. Brown, who observed no neurological abnormalities.  Her opinion was that Plaintiff was suffering from post-viral headache syndrome, rather than epilepsy, and she recommended that he taper off of Dilantin.  (Tr. 336-38.)

On September 16, 1999, Plaintiff returned to Dr. Citty, who diagnosed him with prostate gland inflammation, hemorrhoids, seizure disorder and Rocky Mountain spotted

---

[2]Dilantin is an anti-seizure medication; Pepcid is an antacid; doxycycline and Levaquin are antibiotics; Xanax is used for the treatment of anxiety; and Ambien is a sleeping pill.  See http://www.medterms.com.

fever, and he prescribed an antibiotic and a muscle relaxant.  (Tr. 343.)  On October 4,

1999, Dr. Citty completed a seizure disorder form, stating that Plaintiff reported having had

three seizures since the last medication adjustment in September, and stating that Dilantin

had been prescribed.  (Tr. 340.)  On January 4, 2000, Dr. Citty completed a medical

assessment of Plaintiff's physical ability to perform work-related activities, finding that he

was subject to some functional restrictions due to neurological damage, a secondary

seizure disorder, muscle spasms and anxiety.  (Tr. 350-53.)[3]

The record contains no further evidence of visits to Dr. Citty or Dr. Brown.

On June 10, 2000, Plaintiff returned to work as a millwright foreman, making $17

an hour.  (Tr. 58-69.) At the time of the first hearing before the ALJ in August 2000, he was

working ten hours a day, six days a week, but he said his schedule would soon change to

five eight-hour days.  He said he had had two seizures since going back to work, but was

not taking any seizure medication because he had received conflicting advice from his

physicians.  (Tr. 59-64, 73-74.)   He said the first month back at work was "really rough"

due to his weakened physical condition, but that his energy level had "balanced out."  (Tr.

61-63.)

At the second hearing before the ALJ, Plaintiff testified that he left his millwright

position in October 2000, because their "job was coming to an end anyway," and he was

"physically just exhausted" and "stressed mentally."  He said that, after about twenty or

---

[3]Specifically, Dr. Citty found that Plaintiff: could lift-carry up to ten pounds frequently, and up to fifty pounds occasionally; could sit eight hours of an eight-hour workday, three of those without interruption; could stand two hours, and could walk one hour; could frequently do simple grasping, could occasionally do fine manipulation, and could frequently use his feet; could occasionally climb, balance and stoop, but could never kneel or crawl; could occasionally reach, handle, feel and push-pull, and frequently hear and speak; and should avoid all exposure to chemicals and moderate exposure to heights, moving machinery, noise, dust and fumes.

twenty-five days, he began working thirty hours a week as a machine operator/furniture assembler at Whittaker Furniture, and had worked there continually since then, making $9.50 an hour.  (Tr. 88-91.)  He said he had experienced no seizures while working at Whittaker and that it was "pretty laid back," with "no stress, no fuss, no muss."  (Tr. 92.)

As stated earlier, disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Substantial gainful activity is work involving "significant physical or mental activities" and which is done for pay or profit.  20 C.F.R. §§ 404.1572(a) & (b), 416.972(a) & (b).  If an individual's earnings averaged more than $700 a month during the years relevant here, then the individual was presumptively engaged in substantial gainful activity.  Id. §§ 404.1574(b)(2), 416.974(b)(2).

It is undisputed that Plaintiff returned to substantial gainful activity on June 10, 2000, earning far in excess of the required minimum, and that he remained so employed through the date of the Commissioner's final decision.  By returning to substantial gainful activity at that time, Plaintiff fell about three weeks short of the twelve-month durational requirement.  Plaintiff argued before the ALJ, and makes the same argument here, that his return to work should be considered a "trial work period" which does not count against the twelve-month period.[4]

---

[4]Trial work periods no longer apply to claims for supplemental security income benefits. Employment Opportunities for Disabled Americans Act, Pub. L. No. 99-643, 100 Stat. 3574 (1986) (amending 42 U.S.C. § 1382c by eliminating provision on trial work period); Frank S. Bloch, Bloch on Social Security § 2.22 (2005).  Therefore, this argument can apply only to Plaintiff's claims for disability benefits under Title II.

A trial work period is a period in which a claimant may test his or her ability to work and still be considered disabled.  20 C.F.R. § 404.1592(a).  For many years, agency policy prohibited a trial work period before an award of benefits or the passage of twelve months since onset.  <u>See</u> Soc. Sec. Rul. 82-52, <u>supra</u> at *2; 20 C.F.R. § 404.1592(d)(2) (2001). This policy was successfully challenged in some courts, including the Eighth Circuit Court of Appeals.  <u>See</u> <u>Newton v. Chater</u>, 92 F.3d 688, 692-94 (8th Cir. 1996).  The issue was resolved on March 27, 2002, when the United States Supreme Court decided <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).  <u>Walton</u> abrogated <u>Newton</u>'s holding and held that, although the statutory language was ambiguous as to whether a claimant could be granted a trial work period within twelve months of onset, the agency's policy disallowing an earlier trial work period was a reasonable and permissible interpretation of the statute.  <u>Id.</u> at 222-25.

The parties agree that, if <u>Walton</u> controls, the Commissioner's denial of Plaintiff's claim must be affirmed.  However, the ALJ issued his decision almost two months before the <u>Walton</u> opinion.  Plaintiff contends that the ALJ was obligated to apply Eighth Circuit law as it existed at the time he rendered his decision which, Plaintiff argues, would have resulted in a favorable decision.  At that time, agency policy in the Eighth Circuit was set forth in an acquiescence ruling issued by the Social Security Administration in response to <u>Newton</u>.  Soc. Sec. Acq. Rul. 98-18(8), 1998 WL 79437 (Feb. 23, 1998), rescinded, in light of <u>Walton</u>, by 67 Fed. Reg. 39781-03 (Soc. Sec. Admin. June 10, 2002).  Under the ruling, as recognized by the ALJ, Plaintiff had to establish that, at the time he returned to substantial gainful activity (June 10, 2000), his impairment and inability to work were still expected to last for at least twelve consecutive months from the date of onset (July 2, 1999).  (Tr. 22-27.)

6

Substantial evidence in the record supports the ALJ's conclusion that the impairments precluding Plaintiff from work activity from July 2, 1999, to June 10, 2000, were not expected to last or remain at such a degree of severity as to preclude substantial gainful work activity for at least twelve consecutive months from Plaintiff's alleged onset date. (Tr. 27.) The medical records show no medical appointments past October 1999. The only record of restrictions placed on Plaintiff by any physician was by Dr. Citty, averring that he would be totally disabled for six months, which would be through January 2000, with moderate functional limitations noted on January 4, 2000. Plaintiff's wife testified that Plaintiff was severely limited in his functioning for almost six months (which again would be through January 2000) and that, after that, he began "coming back gradually." (Tr. 68.) Both she and Plaintiff also testified that Dr. Citty did not approve of Plaintiff's returning to work when he did; however, no objective evidence supports this and Dr. Citty reportedly left the decision up to Plaintiff because "he [Plaintiff] knows how he feels." (Tr. 71-72, 87.) Additionally, although Plaintiff says he suffered two seizures after he returned to work, he admitted he was not taking anti-seizure medication at that time due to confusion as to whether he was supposed to be taking it or not. There is no evidence that he suffered seizures to the same extent, or at all, when he was taking the medication regularly. The absence of supporting medical evidence, the record of infrequent treatment, and Plaintiff's non-compliance with a medication regimen which could control his seizures suggest that Plaintiff did not suffer from an impairment that was expected to disable him for twelve consecutive months. See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (absence of supporting medical evidence, failure to follow prescribed medical treatment, and infrequent treatment are bases for discounting subjective complaints of disability);

Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (seizure condition which can be controlled by medication is not disabling).

While Plaintiff did experience some residual symptoms after returning to work, he was still able to perform a strenuous full-time job, with long hours and supervisory responsibilities.[5]  Even after leaving that job, he kept working at substantial gainful activity continuously through the date of the second hearing, in January 2002, with no complaints of seizures or any significant functional restrictions.

Plaintiff attempted at the hearing to excuse his failure to pursue more aggressive medical treatment partially due to financial reasons.  (Tr. 60-61.)  However, there is no evidence that Plaintiff attempted to obtain low-cost medical treatment or that he was ever denied care because of an inability to pay. See Goff v. Barnhart, No. 04-3337, 2005 WL 2086753, *6 (8th Cir. Aug. 31, 2005) (without evidence that claimant was ever denied medical treatment due to financial reasons, failure to take medication or pursue treatment is relevant to credibility determination); Brown, 390 F.3d at 540.

Under these circumstances, the ALJ properly determined that Plaintiff did not suffer from an impairment that disabled or could have been expected to disable him for a continuous twelve-month period from July 2, 1999, within the meaning of the applicable statutes and regulations.  Whether the issue is governed by Walton, or by the agency's acquiescence ruling for the Eighth Circuit in light of Newton, unfortunately, Plaintiff cannot prevail.

---

[5]The ALJ commented that Plaintiff was "working harder than anybody else in this room." (Tr. 72.)

8

**Conclusion**

After a careful review of the evidence, the Court finds that Plaintiff's arguments for reversal cannot be sustained and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 21st day of September, 2005.


_____
UNITED STATES MAGISTRATE JUDGE